**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Jostin Nahum Blandon,<br><br>                       Petitioner,<br><br>       -v-<br><br>Raul Maldonado Jr., Warden Metropolitan Detention Center;<br>Judith Almodovar, New York Field Office Director for U.S.<br>Immigration and Customs Enforcement; Pamela Bondi,<br>Attorney General of the United States; Kristi Noem, Secretary<br>of Homeland Security; and Todd M. Lyons, Acting Director,<br>U.S. Immigration and Customs Enforcement,<br><br>                       Respondents. | 2:26-cv-1669<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On March 20, 2026, Jostin Nahum Blandon, an individual with Special Immigrant

Juvenile Status ("SIJ status"), filed this Petition seeking a writ of habeas corpus under 28 U.S.C.

§ 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement

("ICE") since January 1, 2026. (Petition for Writ of Habeas Corpus ("Pet."), ECF No. 1.) The

Petition claims that ICE's arrest of Mr. Nahum Blandon violated the Fourth Amendment to the

U.S. Constitution and that ICE's detention of him without notice and opportunity to be heard

violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Fourth

Amendment, 8 U.S.C. § 1226(a) ("Section 1226(a)"), and the Administrative Procedure Act, 5

U.S.C. § 706(2)(A). The Petition seeks the following relief: (1) a writ of habeas corpus requiring

Respondents to immediately release Mr. Nahum Blandon without any additional restrains on his

liberty, or in the alternative that the Court conduct a constitutionally adequate individualized

bond hearing within fourteen days; (2) an order requiring Respondents to restore Mr. Nahum

Blandon's deferred action, which was revoked around one week after his arrest; (3) an order

enjoining Respondents from re-detaining Mr. Nahum Blandon pending a final determination in

his removal proceedings; (4)  reasonable attorney's fees and costs pursuant to the Equal Access

to Justice Act, 28 U.S.C. § 2412(d); and (5) any other further relief the Court deems just and

proper. (Pet. at 24–25.)[1]

For the reasons explained below, the Petition is GRANTED in part.

## PROCEDURAL HISTORY

Respondents are federal government officials named in their official capacities: (1) Raul

Maldonado Jr., Warden of the Metropolitan Detention Center; (2) Judith Almodovar, Director of

the New York Field Office for ICE; (3) Pam Bondi, Attorney General of the United States; (4)

Kristi Noem, the Secretary of the Department of Homeland Security ("DHS"); and (5) Todd M.

Lyons, the Acting Director of ICE.

Respondents have no objection to this Court deciding the Petition on the parties' written

submissions in lieu of holding an evidentiary hearing. (Resp. to Order to Show Cause ("Resp."),

ECF No. 6 at 4.)[2] They rely on and incorporate by reference the arguments they made to this

---

[1] The Petition also seeks an order prohibiting Mr. Nahum Blandon's removal from the United States and transfer from the Eastern District of New York pending adjudication of the instant petition. (Pet. at 3, 24.) The Court has effectively granted this relief through the issuance of a March 20, 2026 Stay of Removal and Order to Show Cause, which prohibited Respondents from removing Mr. Nahum Blandon from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 3.)

[2] In response to the Petition, Respondents submitted a declaration from Acting Supervising Detention and Deportation Officer Michael Damiano (Declaration of Michael Damiano ("Damiano Decl."), ECF No. 6-1) and several attached exhibits: (1) two versions of a January 7,

Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (Resp. at 2, 4 (citing Respondents' brief at ECF No. 14 of *Rodriguez-Acurio*, No. 25-cv-6065).) They also incorporate by reference the arguments made before Judge Gary Brown of this District in *Garcia Lanza v Noem*, No. 26-cv-0029, __ F. Supp. 3d __, 2026 WL 585130, at * 6 (E.D.N.Y. Mar. 3, 2026). (Resp. at 4.) They specifically "refer to the Government's briefs in *Garcia Lanza*" at docket numbers 11 and 14. (*Id.* at 4 n.4.)

Respondents argue that ICE's detention of Mr. Nahum Blandon falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 2.) According to Respondents, Section 1225(b)(2) requires Mr. Nahum Blandon's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

---

2026 U.S. Citizenship and Immigration Services ("USCIS") Termination Notice, which ended Mr. Nahum Blandon's deferred action (ECF No. 6-2 at 3); (2) a March 16, 2023 ruling by an Immigration Judge terminating removal proceedings against Mr. Nahum Blandon (*id.* at 8); (3) a January 1, 2026 DHS Form I-200 arrest warrant (*id.* 6-2 at 12); (4) a January 1, 2026 Notice to Appear (*id.* at 14 –17); (5) a Notice of Fee Assessment (ECF No. 6-2 at 19), which charges Mr. Nahum Blandon $5,130; (6) an undated Privacy Notice concerning the ICE Online Detainee Locator System (*id.* at 21); (7) a January 1, 2026 Mandatory Notice regarding consular notification (*id.* at 22); (8) a January 1, 2026 document that has not been translated from Spanish, which is titled "Informacion Importante Sobre Seccion 236(a) Decisiones de Detencion Inicial" and is labeled a Settlement Communication pursuant to Rule 408, Fed. R. Ev. (*id.* at 29); (9) a January 2, 2026 Notice of Video Hearing (*id.* at 25); and (10) a March 30, 2026 Order of the New York – Varick Immigration Court, which denies a request by Nahum Blandon for a continuance of removal proceedings (ECF No. 6-2 at 28).

Respondents acknowledge that U.S. Citizenship and Immigration Services ("USCIS") granted Mr. Nahum Blandon SIJ status on December 4, 2020, and that as a result of that status, USCIS deferred action on removal proceedings against Mr. Nahum Blandon on April 18, 2023. (Resp. at 3–4; Declaration of Michael Damiano ("Damiano Decl.") ¶¶ 15, 18, ECF No. 6-1.) Respondents also agree that when ICE arrested and detained Mr. Nahum Blandon on January 1, 2026, he had SIJ status and remained on deferred action. (Damiano Decl. ¶¶ 15, 20 (acknowledging that the Termination Notice ending Mr. Nahum Blandon's deferred action is dated January 7, 2026).) However, Respondents argue that (1) SIJ status has no impact on "ICE's authority to arrest or detain individuals" because that status does not strip the government of removal power; and (2) "the grant of deferred action is a discretionary act that does not preclude commencing, adjudicating or executing removal actions." (Resp. at 2–3.) Respondents also submit a Termination Notice reflecting that USCIS ended Mr. Nahum Blandon's deferred action on January 7, 2026—six days *after* ICE arrested and detained him. (Deferred Action Termination Notice, ECF No. 6-2 at 3.) However, as reflected on the Termination Notice, Mr. Nahum Blandon's SIJ status "remains approved." (*Id.*)

## DISCUSSION

### I.      Petitioner is Detained Under 8 U.S.C § 1226(a)

Respondents are incorrect that Mr. Nahum Blandon is seeking admission and therefore subject to mandatory detention under Section 1225(b)(2) for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25, 2026). The Court's decision in *Rodriguez-Acurio* is incorporated by reference in its entirety in this Order.

4

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Nahum Blandon is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Nahum Blandon had been living in Freeport, New York since 2019, received deferred action after having been granted SIJ status in December 2020, and was living with his mother and two U.S. citizen siblings.

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (Resp. at 2–3.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases

5

raising this issue are on appeal.[3] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[4] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.

Respondents' invocation of Section 1225(b)(2) as the basis for Mr. Nahum Blandon's detention is belied by the record. First, at the time of his arrest, there were *no pending removal proceedings* against Mr. Nahum Blandon. In fact, several years after USCIS granted him SIJ

---

[3] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[4] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez,* 583 U.S. 281, 289 (2018)).

status in 2020, removal proceedings against Mr. Nahum Blandon were dismissed in March 2023. USCIS not only granted him deferred action in April 2023, but that deferred action was in place as of January 1, 2026 and had not been revoked. *See* Damiano Decl. ¶¶ 15, 18; *J.R.R., Petitioner, v. Genalo*, No. 26-cv-1245, 2026 WL 691803, at *3 (E.D.N.Y. Mar. 11, 2026) ("Respondents' invocation of Section 1225(b)(2)(A) is particularly puzzling here, where Petitioner *has no removal proceedings pending* and in fact *cannot be removed* due to his membership in the *J.O.P.* settlement class [concerning individuals granted deferred action due to SIJ status].")).

Second, documents in the record suggest that ICE arrested Mr. Nahum Blandon pursuant to Section 1226(a)—not Section 1225(b)(2). The post-hoc arrest warrant served on Mr. Nahum Blandon invokes Section 1226(a). (*See* Warrant, ECF No. 6-2 at 12 (reflecting that after his arrest, Mr. Nahum Blandon was served with an arrest warrant issued pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)). Respondents also submit a document in Spanish, titled a "Settlement Communication" that appears to provide "Informacion" regarding detention under INA Section 236(a), which again corresponds to Section 1226(a), not Section 1225(b)(2). (*See* ECF No. 6-2 at 23.) Respondents do not explain what this document is or provide an English language translation.

Third, Respondents first invoked Section 1225(b)(2) as the basis for Mr. Nahum Blandon's detention in the course of this litigation. (Resp. at 2–3.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline*

7

*Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Nahum Blandon is governed by the discretionary detention framework set forth in Section 1226(a)—not Section 1225(b)(2).

**II.    Respondents Violated Petitioner's Right to Procedural Due Process**

For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Nahum Blandon has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. (Resp. at 2–3; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded

8

procedural due process protection).[5]) ICE's detention of Mr. Nahum Blandon without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Nahum Blandon since January 1, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Nahum Blandon without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Nahum Blandon because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on January 1, 2026. This risk is particularly heightened here where at the time of his arrest, Mr. Nahum Blandon had valid SIJ status *and* deferred action *that had not been revoked*. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government

---

[5] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

interests advanced by ICE's detention of Mr. Nahum Blandon without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is nothing in the record showing that ICE detained Mr. Nahum Blandon on the basis that he presented a flight risk or danger to the community. To the contrary, Mr. Nahum Blandon has significant ties to New York, where he has been living with his mother and two U.S. citizen siblings for seven years—since he fled his home in Nicaragua after government security forces allegedly kidnapped and killed one of his friends for engaging in anti-government protest.[6] (Pet. ¶ 1, 23–25.) Moreover, as of the morning on which ICE arrested him, Mr. Nahum Blandon had SIJ status, removal proceedings against him had been terminated since March 16, 2023, and he was granted deferred action on April 18, 2023. (Pet. ¶ 1; Damiano Decl. ¶ 18.) Nothing in the record shows that there was any change in Mr. Nahum Blandon's circumstances after April 2023, when Mr. Nahum Blandon was released on his own recognizance in light of his SIJ status indicating that he presented no public safety or flight risk.

Moreover, nothing in the record suggests that any DHS or ICE officer made *any* individualized determination that Mr. Nahum Blandon presented a danger or flight risk *before* ICE arrested and detained on January 1, 2026. Damiano attests that on the morning of January 1,

---

[6] Mr. Nahum Blandon acknowledges that that on January 27, 2023, he was convicted of disorderly conduct and was ordered to pay a $100 fine. (Pet. ¶ 29; Damiano Decl. ¶ 16.) On July 27, 2025, has was also charged with a misdemeanor for possession of a controlled substance in the seventh degree in violation of New York Penal Law Section 220.03, and that charge remains pending. (Pet. ¶ 29.) However, Respondents have not argued that these charges made Mr. Nahum Blandon a safety risk, nor could they because of the minor nature of the charges. Moreover, there is no evidence in the record that Respondents were even aware of these charges at the time of Mr. Nahum Blandon's arrest because no individualized determination was made that Mr. Nahum Blandon posed a safety risk.

2026, he and other ICE officers determined that Mr. Nahum Blandon matched the physical description of another person who was a "primary target" of an enforcement operation. (Damiano Decl. ¶¶ 21–22.) After speaking to Mr. Nahum Blandon and learning his "name, date of birth and country of origin," officers "realize[d] that he was not the primary target," but *nonetheless* conducted a records check in order to "determine[] that [Mr. Nahum Blandon was illegally present in the United States." (*Id.* ¶ 27.) Damiano does not address *why* officers conducted such a check after determining that Mr. Nahum Blandon was not the target or what authority supported this action. (*Id.*) He attests that based on this information, a different ICE officer issued a Form I-200 Warrant of Arrest "while in the field," that officers "presented the warrant to [Mr. Nahum Blandon]," placed him under arrest, and transported him to the ICE processing office at 100 Carman Avenue in East Meadow. (*Id.* ¶ 30; Form I-200, ECF Nos. 6-2 at 12.) However, Damiano acknowledges that the officers did not serve the warrant on Mr. Nahum Blandon before or during the arrest, and the face of the warrant reflects that it was not served on Mr. Nahum Blandon until he arrived in East Meadow. (Damiano Decl. 30, 32; Form I-200.)

It is undisputed that there were no pending removal proceedings concerning Mr. Nahum Blandon at the time that ICE arrested and detained him because an Immigration Judge had terminated removal proceedings against him on April 18, 2023. (Pet. ¶ 1.) ICE did not issue a Notice to Appear charging Mr. Nahum Blandon as being removable until *after* he arrived at the East Meadow ICE processing facility. (Damiano Decl. ¶ 34.) As other judges in this District have observed, however, the regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest. *See, e.g., Gopie v. Lyons*, No. 25-cv-52299, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) ("The [Notice to Appear] begins the removal

process, and *at that time or after its issuance*, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed." (emphasis added)); *Maldonado v. Bostock*, No. 2:23-cv-760, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023) ("Section 236.1(b) states that certain immigration officers have authority to issue and serve a Form I-200 arrest warrant at the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed. That does not mean that DHS may trigger Section 1226(a) at any time and in any circumstance . . . by issuing an arrest warrant."); *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1224 (S.D. Cal. 2019) ("DHS regulations authorize an immigration officer to formally arrest and take the alien into custody pursuant to a Form I-200 Warrant of Arrest *at the time* [a Notice to Appear] is issued." (emphasis added)); *Castanon Nava v. Dep't of Homeland Sec.,* 806 F. Supp. 3d 823 (N.D. Ill. 2025) (rejecting the notion that ICE can issue Form I-200 warrants immediately upon identifying a noncitizen unlawfully present in the United States).

Finally, Damiano attests that *after* officers placed Mr. Nahum Blandon under arrest, he purportedly "attempted to flee on foot." (Damiano Decl. ¶ 31.) However, at that time of the alleged attempt to flee, an officer had *already arrested* Mr. Nahum Blandon *without* making any individualized determination that he posed a flight or public safety risk. (*Id.* ¶ 30.) Moreover, Respondents do not argue in their letter response that Mr. Nahum Blandon was detained under Section 1226(a) on the basis of an "attempt[] to flee on foot." (Resp. at 2–3.) Rather, Respondents insist that Mr. Nahum Blandon is subject to mandatory detention under Section 1225(b)(2).

Accordingly, at no point during these events did any of the officers involved conduct an initial custody determination to determine whether Mr. Nahum Blandon presented a risk of flight

12

or danger to the community. Based on the record, the ICE officers who arrested and detained Mr.

Nahum Blandon had no reason to believe that he presented any such risks.

Weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake,

the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Nahum

Blandon's detention was required to advance any legitimate government interest in preventing

danger to the community or ensuring appearance at removal proceedings—Respondents'

detention of Mr. Nahum Blandon with no notice or opportunity to be heard violates his Fifth

Amendment rights to procedural due process. Thus, ICE's detention of Mr. Nahum Blandon was

unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization

based on its expansive interpretation of Section 1225(b)(2).[7] *See Lopez Benitez*, 795 F. Supp. 3d

at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

## III. Remedy

Upon finding a constitutional violation, a district court "may" grant a writ of habeas

corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243.

Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v.*

*Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for

ordering release from ICE detention as well as limited injunctive relief enjoining Respondents

---

[7] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Nahum Blandon, that provision is plainly inapplicable to him. Mr. Nahum Blandon is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Nahum Blandon since January 1, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Nahum Blandon from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Nahum Blandon is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Nahum Blandon is not rendered meaningless.

Additionally, Mr. Nahum Blandon "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Nahum Blandon was not subject to any release conditions, including but not limited to electronic monitoring requirements. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Nahum Blandon without any release conditions, including but not limited to any electronic monitoring, such as GPS monitoring.

14

The relief afforded by the Court at this time is limited to Mr. Nahum Blandon's Fifth Amendment due process claim stemming from Respondents' assertion that Mr. Nahum Blandon is "seeking admission" under Section 1225(b)(2). However, because the Petition seeks not only release, but also a restoration of deferred action that was revoked, this matter remains open. *See Velasco Lopez*, 978 F.3d at 855 ("Habeas corpus, as the Supreme Court has said, is an adaptable remedy, the precise application and scope of which changes depending upon the circumstances . . . . The equitable and flexible nature of habeas relief also gives the reviewing court considerable latitude . . . ."). The Court reserves judgment on Mr. Nahum Blandon's request for relief in the form of restoration of deferred action.

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is GRANTED IN PART.

Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any conditions, including but not limited to the condition of electronic monitoring whether GPS monitoring or any other form, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **10:00 am, March 22, 2026**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to all identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released, in a filing on the docket by **5:00 pm on March 22, 2026**.

Additionally, pending the issuance of any final removal order against Mr. Nahum Blandon, Respondents are enjoined from denying Mr. Nahum Blandon bond in any subsequent

15

proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Nahum Blandon may file an application for attorneys' fees and costs incurred in pursuing this action by June 19, 2026. The Court also holds in abeyance Mr. Nahum Blandon's remaining claims, including his request for relief in the form of a restoration of deferred action.

The Show Cause hearing scheduled for March 24, 2026, at 4:30 p.m. in the Alfonse D'Amato U.S. Courthouse will proceed for argument on the remaining issues in the Petition. Mr. Nahum Blandon may attend the hearing, but neither party is required to call any witnesses for testimony. The matter is held in abeyance.


Dated:  Central Islip, New York
        March 21, 2026

 _/s/ Nusrat J. Choudhury_____
NUSRAT J. CHOUDHURY
United States District Judge

16